Argued and submitted February 22, 2019, reversed and remanded
April 15, 2020

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

SHANE DEVON MAYO,
*Defendant-Appellant.*

Washington County Circuit Court
16CR50221; A166225

465 P3d 267

Defendant appeals from a judgment of conviction for possession of methamphetamine, ORS 475.894. During defendant's trial, defendant provided uncorroborated testimony that he did not know that he had methamphetamine inside of his backpack. On appeal, defendant contends that the trial court erred when it overruled his objection to comments made by the prosecutor during the prosecutor's closing argument regarding defendant's failure to call witnesses to corroborate his testimony. *Held*: The trial court erred when it overruled defendant's objection to the prosecutor's comments during closing argument. Defendant's claim that he was unaware that there was methamphetamine inside of his backpack was not an affirmative defense on which he bore the burden of production or persuasion, or a defense on which he bore the initial burden of producing evidence, and, therefore, the prosecutor was not permitted to comment on defendant's failure to call witnesses to corroborate his testimony.

Reversed and remanded.

Eric Butterfield, Judge.

Matthew Blythe, Deputy Public Defender, argued the cause for appellant. Also on the briefs was Ernest G. Lannet, Chief Defender, Criminal Appellate Section, Office of Public Defense Services.

Keith L. Kutler, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Shorr, Judge.

TOOKEY, J.

Reversed and remanded.

**TOOKEY, J.**

Defendant appeals from a judgment of conviction for possession of methamphetamine, ORS 475.894. Defendant contends that the "trial court erred when it overruled defendant's objection to the prosecutor's statements during closing argument." More specifically, defendant argues, among other points, that certain statements made by the prosecutor during the prosecutor's rebuttal closing argument "impermissibly shifted the burden of proof onto defendant."[1] For the reasons that follow, we conclude that the trial court erred when it overruled defendant's objection, because the prosecutor's comments raised a "realistic possibility of confusing the jurors about the ultimate standard or burden of proof." *State v. Totland*, 296 Or App 527, 531, 438 P3d 399, *rev den*, 365 Or 502 (2019) (internal quotation marks omitted). We further conclude that that error was not harmless. Accordingly, we reverse and remand.

## I.   FACTS

Officer Haugen was on patrol when he saw defendant and a woman, Claros, get into a car. Claros was driving, and defendant was in the front passenger seat. Claros committed a traffic infraction and Haugen decided to stop the car. Before Haugen did so, he called a K-9 officer, Bastinelli, to assist him. Bastinelli's dog was trained to alert to the odor of drugs. Haugen then stopped the car that Claros was driving. Shortly thereafter, Bastinelli and another officer, Lutu, arrived at the traffic stop.

Haugen went to the driver's side door and explained to Claros the reason for the stop. Lutu went to the passenger side of the car and saw that defendant had a backpack sitting on the floorboard "between his legs, toward his feet." Both Claros and defendant informed the officers that the car was not theirs but belonged to a third party. Meanwhile, Bastinelli retrieved his dog from his patrol car and deployed the dog around the car that Claros had been driving. The

---

[1] Defendant also asserts that the trial court erred when it instructed the jury that it could reach a nonunanimous verdict, published a verdict form that allowed the jury to reach a 10 to two verdict, and accepted a nonunanimous verdict. We reject those assignments of error, on the merits, without written discussion.

dog alerted to the presence of drugs in the car. Lutu ordered defendant out of the car and searched the contents of the car, including defendant's backpack. Inside the front pocket of defendant's backpack, Lutu found a plastic bag containing a usable quantity of methamphetamine. Defendant was charged with one count of possession of methamphetamine, ORS 475.894.

Defendant was tried by a jury. Prior to *voir dire*, the trial court explained to the prospective jurors:

> "Under our system of justice, the defendant is presumed innocent of any crime or wrongdoing unless and until the State proves the defendant's guilt beyond a reasonable doubt. Therefore, the burden is on the State to prove the defendant's guilt beyond a reasonable doubt."

After the jury was selected for defendant's trial, and during the trial court's preliminary instructions to the jury, the trial court explained to the jury:

> "The fact that a criminal charge has been filed against the defendant is not evidence. The defendant is innocent of any crime unless and until the State proves the defendant's guilt beyond a reasonable doubt."

During defendant's trial, after the close of the state's case-in-chief, defendant presented his case, calling himself as a witness. Defendant testified that the backpack that was found in the car was his, but that the methamphetamine was not his, and that he did not know that there was methamphetamine in the backpack until Luto removed it from the backpack. To support his theory of defense, defendant further testified that (1) the car belonged to defendant's friend, Gillenwater, (2) Gillenwater had given defendant a ride home from work "a day or two" before the day of the traffic stop, (3) defendant forgot his backpack in the "back hatchback" of the car, (4) defendant phoned Gillenwater on the day of the traffic stop, (5) defendant discovered that Gillenwater had loaned the car to Claros, (6) defendant arranged to meet Claros to recover his backpack and get a ride home, and, (7) at some point, prior to defendant entering the car, defendant's backpack had been moved out of the "back hatchback" where defendant had left it when Gillenwater had given him a ride home.

Defendant did not call Gillenwater, Claros, or any other witness to corroborate his testimony or otherwise support his theory of defense.

During the state's closing argument, the prosecutor explained to the jury that

"defendant is charged with Unlawful Possession of Methamphetamine, and what the State has to prove to you is that the defendant knowingly possessed methamphetamine."

Additionally, during the state's closing argument, the prosecutor stated:

"You have the defendant's version of what happened that day. Who do you believe? Do you believe that he left the backpack overnight in the car and somehow, magically, the next day somebody put in a baggie of a usable quantity of methamphetamine? Why would somebody do that? Why would somebody leave drugs?

"And we all—you can use your common sense and reason. People buy drugs. People want to buy drugs in the street. They're not going to give them to somebody else or leave them in somebody else's backpack. There's no question that, on that day, defendant possessed methamphetamine. It was his drugs. He had the physical possession. It was in his property."

During defendant's closing argument, defendant argued that he was not guilty because he did not know that the methamphetamine was in his backpack.

During the state's rebuttal argument, the prosecutor made the comments that defendant contends were improper:

"[PROSECUTOR]: And why, again, would somebody pick up another bag that doesn't belong to them, and the only thing they put in there is a useable quantity of methamphetamine? This isn't somebody discarding garbage, something very small. This is somebody actually putting a baggie that is consistent with personal use. And it is put in such a pocket, in such a place where it is easily accessible, where it is easily found. It's not put in the main compartment where there's a lot of items that could be placed, that could be lost.

> "And use your common sense and reason. Once again, there is no evidence that he actually did leave the backpack overnight. There is no evidence from his friend, [Gillenwater], that, 'Yeah,' you know, 'I remember him using this.'
>
> "[DEFENSE COUNSEL]: Objection. Improper commenting on burdens. And misstatement of evidence—
>
> "THE COURT: The objection—the objection is overruled."

Immediately after defendant's objection was overruled, the prosecutor continued:

> "We didn't hear from [Claros]. The only person who's telling you this story about this backpack being left overnight somewhere where things are planted is the defendant in this case."

Defendant did not renew his objection following the prosecutor's statement concerning Claros.

After the prosecution's rebuttal argument, the trial court provided final instructions to the jury, which included the following instruction:

> "[T]o establish the crime of Unlawful Possession of Methamphetamine, the State must prove beyond a reasonable doubt the following elements: The act occurred on or about August 4th, 2016, and [defendant] knowingly possessed methamphetamine."

Defendant was ultimately convicted of one count of unlawful possession of methamphetamine.

## II. ANALYSIS

As noted above, on appeal, defendant argues that the "trial court erred when it overruled defendant's objection to the prosecutor's statements during closing argument." Defendant contends the prosecutor's statements during the state's rebuttal argument concerning his failure to call Gillenwater and Claros to corroborate his testimony "effectively shifted the burden of proof" because they "implied that defendant had an affirmative burden to call witnesses to support his testimony that he left the backpack in Gillenwater's car and was unaware that there were drugs inside."

The state, for its part, argues the prosecutor's statements were not improper because a "prosecutor may comment on a deficiency in the defendant's evidence—other than the failure of a defendant to testify—when the defense raises a matter on which it bears a burden of production," which, in the state's view, defendant did here with respect to his defense, *viz.*, that he had left his backpack in Gillenwater's car a day or two before the traffic stop and he did not know the methamphetamine was in his backpack.[2]

"We review a trial court's decision to overrule an objection to closing arguments for abuse of discretion." *Totland*, 296 Or App at 531. "A trial court's discretion is not unbounded." *Id.* (internal quotation marks omitted). If "an argument was improper, properly challenged, and likely to prejudice the jury unfairly, upon review, we must reverse." *Id.* (internal quotation marks and brackets omitted). In conducting our review, "we view statements made by a party during argument in context, not in a vacuum." *Id.*

As we have previously observed, "The law presumes every defendant upon trial charged with crime to be innocent, and it devolves upon the prosecution to prove by evidence to the satisfaction of the trial jury beyond a reasonable doubt, that the defendant committed the crime charged in the indictment." *Id.* at 530 (internal quotation marks omitted). Under ORS 136.415, "[a] defendant in a criminal action is presumed to be innocent until the contrary is proved. In case of a reasonable doubt whether the guilt of

---

[2] The state also argues that defendant's assignment of error, as it relates to the second alleged improper statement by the prosecutor—"We didn't hear from [Claros]"—is not preserved because defendant did not object to it. We reject that argument because the record demonstrates that a second objection on the same grounds would have been futile, insofar as the trial court overruled defendant's objection regarding the prosecutor's statement concerning Gillenwater immediately prior to the prosecutor making the statement concerning Claros. *See State v. George*, 337 Or 329, 339, 97 P3d 656 (2004) ("Our requirements respecting preservation do not demand that parties make what the record demonstrates would be futile gestures."); *State v. Logston*, 270 Or App 296, 302, 347 P3d 352 (2015) ("[A] defendant who immediately objects to the prosecutor's argument, but whose objection is overruled, need not engage in futile efforts to obtain a curative instruction or a mistrial on grounds that the trial court has already determined to lack merit."); *State v. Barajas*, 247 Or App 247, 251, 268 P3d 732 (2011) ("Preservation does not require a party to continue making an argument that the trial court has already rejected.").

the defendant is satisfactorily shown, the defendant is entitled to be acquitted."[3]

"In arguing that the state has met its burden to prove all elements of a crime beyond a reasonable doubt, a prosecutor may attempt to persuade the jury that it should believe one version of the events and not another." *Totland*, 296 Or App at 530-31 (internal quotation marks omitted). "However, the prosecutor must not inappropriately characterize the jury's fact-finding function in a manner that raises some realistic possibility of confusing the jurors about the ultimate standard or burden of proof." *Id.* at 531 (internal quotation marks omitted).

In *State v. Spieler*, 269 Or App 623, 641-42, 346 P3d 549 (2015), we explained that "certain comments about a defendant's failure to present evidence may reasonably cause the factfinder to misapprehend and misallocate the burden of proof," but "a wholesale prohibition on all such comments would unfairly impair prosecutors' ability to counter certain matters raised or implicated by the defense." Accordingly, we recognized two limited circumstances in which a prosecutor is permitted to "comment on [a] defendant's failure to present or contradict evidence." *Id.* at 641.

---

[3] Although defendant's argument raises due process issues under the Fourteenth Amendment to the United States Constitution, our Supreme Court has explained that "issues should first be addressed on a subconstitutional level" before "consider[ing] any remaining issues under the Oregon constitution" and, "if no state law, including the state constitution, resolves the issues, courts then should turn for assistance to the Constitution of the United States." *State v. Moylett*, 313 Or 540, 545, 836 P2d 1329 (1992), *abrogated on other grounds by State v. Machuca*, 347 Or 644, 227 P3d 729 (2010). Because we conclude that defendant's right to be presumed innocent of the crime with which he is charged under ORS 136.415 was violated, we do not reach defendant's federal constitutional claims, and we decide this case solely on state subconstitutional grounds. *See State v. Boots*, 315 Or 572, 579 & n 7, 848 P2d 76, *cert den*, 510 US 1013 (1993) (discussing whether the "defendant's right to be presumed innocent of the crime with which he is charged [under ORS 136.415 had] been violated" where the trial court limited the jury's consideration on retrial of an aggravated murder charge to those elements necessary to establish the greater offense); *State v. Rainey*, 298 Or 459, 462, 465, 693 P2d 635 (1985) (in a case in which the trial court instructed the jury that proof of unlawful delivery of a substance was *prima facie* evidence of knowledge of its character, observing that it was "not necessary to base a decision on the federal due process rights of defendant * * * because the right not to be convicted of a crime except upon proof of guilt beyond a reasonable doubt is statutorily protected in Oregon" under ORS 136.415).

First, "the prosecutor is permitted to * * * comment[]
on a defendant's failure to meet the burden of production or
persuasion" when "an affirmative defense has been raised,"
such as the defense of extreme emotional disturbance.
*Id.* at 640, 642; *see* ORS 161.055(2) (a defendant has the bur-
den of proving an affirmative defense "by a preponderance
of the evidence"); *see, e.g.*, ORS 163.115(1)(a) (it is an "affir-
mative defense" to intentional murder that "the defendant
was under the influence of an extreme emotional distur-
bance"); ORS 811.180 (establishing affirmative defenses in
prosecutions for driving while suspended or revoked); ORS
161.305 (a "[q]ualifying mental disorder constituting insan-
ity * * * is an affirmative defense"). Accordingly, a comment
on a defendant's failure to present evidence when a defen-
dant has asserted an affirmative defense does not "raise[]
some realistic possibility of confusing the jurors about the
ultimate standard or burden of proof," because the defen-
dant bears both the burden of production and persuasion on
that issue. *Totland*, 296 Or App at 531 (internal quotation
marks omitted).

Second, the prosecutor may comment on a defen-
dant's failure to present evidence "when the defense raises
matters, such as alibi * * *, on which, as a practical matter,
the defendant bears the initial burden of production, but
fails to present any evidence." *Spieler*, 269 Or App at 642;
*see State v. Abram*, 273 Or App 449, 456, 359 P3d 431 (2015)
("Generally, elements of a particular crime must always be
proved by the state, while defenses must be disproved only
in cases where they are raised by the defendant."). ORS
161.055(3) provides, in part, that "[t]he state is not required
to negate a defense," other than an affirmative defense,
"unless it is raised by the defendant" by either providing
"notice in writing to the state before commencement of trial
or affirmative evidence by a defense witness in the defen-
dant's case in chief." *See, e.g.*, ORS 135.455 (requiring a
defendant to provide notice to the state that the defendant
"proposes to rely in any way on alibi evidence" to prove that
"the defendant in a criminal action was, at the time of com-
mission of the alleged offense, at a place other than the place
where such offense was committed"); ORS 161.190 ("In any
prosecution for an offense, justification, as defined in ORS

161.195 to 161.275, is a defense."); ORS 161.209 (self-defense or defense of another); ORS 161.270 (duress); ORS 161.275 (entrapment).[4]

One reason for the second circumstance in which the prosecutor may comment on a defendant's failure to present evidence to support a plain defense is that the jury could otherwise be misled if the defense raises a defense of alibi or self-defense which proposes to rely on evidence or witnesses, and no evidence is produced to support the defense, or no witness is called to testify. In that circumstance, a comment on a defendant's failure to present evidence does not "raise[] some realistic possibility of confusing the jurors about the ultimate standard or burden of proof," *Totland*, 296 Or App at 531 (internal quotation marks omitted), because the defendant has voluntarily assumed some burden of production by raising a "defense," under ORS 161.055(3).

As we observed in *State v. McCoy*, 17 Or App 155, 162, 521 P2d 1074, *aff'd on other grounds*, 270 Or 340, 27 P2d 725 (1974), under ORS 161.055, "[t]o establish a 'defense,' the burden of producing evidence rests on the defendant" and, "[i]f he fails to meet this burden, he suffers the rough

_____

[4] ORS 161.055 provides:

"(1) When a 'defense,' other than an 'affirmative defense,' * * * is raised at trial, the state has the burden of disproving the defense beyond a reasonable doubt.

"(2) When a defense, declared to be an affirmative defense by chapter 743, Oregon Laws 1971, is raised at trial, the defendant has the burden of proving the defense by a preponderance of the evidence.

"(3) The state is not required to negate a defense as defined in subsection (1) of this section unless it is raised by the defendant. 'Raised by the defendant' means either notice in writing to the state before commencement of trial or affirmative evidence by a defense witness in the defendant's case in chief."

The Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 4, 5 (July 1970), reflects that ORS 161.055,

"defines two types of defenses, an 'affirmative defense' and a plain 'defense' in terms of where the burden of proof lies with respect to each of them.

"Every defense postulated in the proposed Code is expressly labeled either one or the other. Thus, 'mental disease or defect' (Article 5) is an affirmative defense and the defendant has the burden of establishing the defense by a preponderance of the evidence, while 'self-defense' (Article 4) is an ordinary defense and the state has the burden of disproving the defense beyond a reasonable doubt."

equivalent of a directed verdict on this defense in that it is not submitted to the jury unless, of course, the state has produced evidence supporting the defense in its case-in-chief." *See State v. Davis*, 14 Or App 422, 428, 512 P2d 1366 (1973) (rejecting the defendant's argument that his written notice of his intention to rely on the defense of entrapment was sufficient to raise a defense which the state would then be required to disprove, because no evidence supported the defense of entrapment); *State v. Williams*, 12 Or App 21, 22-23, 503 P2d 1254 (1972) (concluding that the trial court did not err in refusing to give the jury an instruction on the defense of entrapment, because, although the defendant gave written notice of her intent to rely on the defense of entrapment, no evidence in support of the defense was offered by the defendant and the state's evidence did not support the defense). As such, when a "defense" is "raised by the defendant," ORS 161.055(3), a prosecutor may comment on a defendant's failure to meet his burden of producing evidence to establish that defense without impermissibly shifting the burden to defendant.

This case does not fall under either of the circumstances in which we have concluded that a prosecutor may comment on a defendant's failure to present evidence, because defendant did not raise an "affirmative defense" on which he bore the burden of production or persuasion or a plain "defense," such as alibi, on which, as a practical matter, he bore the initial burden of production. "[I]t is clear that, when the legislature enacts a criminal statute, it knows how to create a defense or an affirmative defense." *State v. Vasquez-Rubio*, 323 Or 275, 281, 917 P2d 494 (1996). The legislature did not provide for an affirmative defense based on a defendant's lack of knowledge when it enacted ORS 475.894. ORS 475.894(1) provides:

> "It is unlawful for any person knowingly or intentionally to possess methamphetamine unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice, or except as otherwise authorized by ORS 475.005 to 475.285 and 475.752 to 475.980."

That statute does not provide, like the examples of affirmative defenses listed above, that "it is an affirmative defense"

to possession of methamphetamine if the defendant did not know that the defendant possessed methamphetamine. *See, e.g.*, ORS 163.325(3) (for certain sexual offenses "in which the victim's lack of consent is based solely upon the incapacity of the victim to consent because the victim is mentally defective, mentally incapacitated or physically helpless, it is an affirmative defense for the defendant to prove that at the time of the alleged offense the defendant did not know of the facts or conditions responsible for the victim's incapacity to consent"). There is no "affirmative defense" language in the text of ORS 475.894 that would place a burden on defendant to prove that he did not have knowledge of the methamphetamines in his backpack.

The legislature can also "provide for a defense or an affirmative defense by using words of limitation such as 'except that,' 'however,' or 'provided that.'" *Vasquez-Rubio*, 323 Or at 281. As noted above, ORS 475.894(1) provides that knowing or intentional possession of methamphetamine is unlawful "*unless* the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of professional practice, or *except* as otherwise authorized by ORS 475.005 to 475.285 and 475.752 to 475.980." (Emphases added.) Accordingly, a defendant has a defense to a charge of unlawful possession of methamphetamine if the defendant can produce evidence that the methamphetamine was obtained pursuant to a valid prescription or order. *See* OEC 305 ("A party has the burden of persuasion as to each fact the existence or nonexistence of which the law declares essential to the *** defense the party is asserting."). Thus, the legislature did incorporate defenses to possession of methamphetamine by using words of limitation, but those defenses do not pertain to whether a defendant acted with the requisite mental state.

We reject the state's argument that defendant raised a matter on which he bears a burden of production once he testified that he had left his backpack in Gillenwater's car a day or two before the traffic stop and that he did not know that the methamphetamine was in his backpack. The text and context of ORS 475.894 reveals that defendant's claim that he was unaware that there were drugs inside of his backpack was not an affirmative defense on which he

bore the burden of production or persuasion, or a defense on which he bore the initial burden of producing evidence, and, therefore, the prosecutor was not permitted to comment on defendant's failure to call witnesses to corroborate his testimony.

An argument by defense counsel that the state failed to prove defendant's knowledge of a controlled substance—even if that argument specifically relies on defendant's testimony—is not an "affirmative defense" or a plain "defense" in this context. It is an argument that the state failed to prove the necessary culpable mental state that applies to the material element of the crime of possession of methamphetamine—an issue on which the state *always* bears the burden of production and persuasion when it seeks to convict a person for violating ORS 475.894. *See* ORS 161.095(2) ("Except as provided in ORS 161.105, a person is not guilty of an offense unless the person acts with a culpable mental state with respect to each material element of the offense that necessarily requires a culpable mental state."); Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report §§ 7-11, 9 (July 1970) (sections 7 to 11 "set out the blameworthy mental states or *mens rea* required for the establishment of criminal liability," and "[s]ubsection (2) of [ORS 161.095] states that except as provided in § 9, [ORS 161.105,] a culpable mental state is *required* for each material element 'that necessarily requires a culpable mental state'" (emphasis added)); *State v. Harper*, 296 Or App 125, 131-32, 436 P3d 44 (2019) (concluding that "the mental state (knowingly or intentionally) necessarily applies" to a charge of possession of methamphetamine, because "[p]osession of methamphetamine is the sole subject matter of" ORS 475.894, and, thus, the trial court erred when it instructed the jury that the state need not prove that the defendant knew that the substance was, in fact, methamphetamine).[5]

---

[5] In *Rainey*, the Supreme Court considered the propriety of a jury instruction stating that proof of unlawful delivery of a controlled substance is "*prima facie* evidence of knowledge of its character." 298 Or at 462-63 (citing ORS 167.238(1) ("Proof of unlawful manufacture, cultivation, transportation or possession of a controlled substance is prima facie evidence of knowledge of its character.")). The court held that the instruction constituted reversible error, because that "presumption places the burden of persuasion on the criminal defendant in a manner

The state cannot comment on a defendant's failure to adduce evidence to prove that the defendant did not have the requisite mental state necessary to establish criminal liability, because doing so could erroneously lead the jury to believe that the defendant carried the burden of introducing evidence to prove his or her innocence.

In sum, here, the state had the burden of producing evidence to prove beyond a reasonable doubt that defendant had knowledge of the methamphetamine found in his backpack. The prosecutor's comments were that defendant failed to provide additional evidence to corroborate his testimony that he did not have knowledge of the methamphetamine. The prosecutor's statements that *defendant's* evidence on this point was lacking suggested defendant had the burden to produce evidence to prove that his version of events was true to create a reasonable doubt about his knowledge of the methamphetamine in his backpack.

The prosecutor's argument in this case carried with it the "realistic possibility of confusing the jurors about the ultimate standard or burden of proof," because defendant had not voluntarily assumed a burden of production by raising a "defense," under ORS 161.055(1), or assumed a burden of persuasion by raising an "affirmative defense" under ORS 161.055(2). *Totland*, 296 Or App at 531 (internal quotation marks omitted). Accordingly, the prosecutor's argument improperly shifted the burden to defendant by inviting the jury to convict defendant for failing to call witnesses to create a reasonable doubt about his knowledge

---

inconsistent with the presumption of innocence" and "relieve[d] the state of the burden of proving all elements of the crime" beyond a reasonable doubt, *viz.*, that the defendant knew that the substance that he was delivering was marijuana. *Id*. at 465. The court stated:

> "The instruction stated a rebuttable presumption against the accused. Thus, the burden of persuasion on a fact necessary to constitute the crime charged, which was an element of the offense, was placed on the criminal defendant. We hold that this allocation was an unlawful denial of the right of defendant to be convicted only upon proof of guilt beyond a reasonable doubt. ORS 136.415. This was error and was prejudicial."

*Id*. at 468. *Rainey* and *Harper* further support our conclusion that the necessary culpable mental state of knowledge, which applies to the material element of possession, is an issue on which the state always bears the burden of production and persuasion when it seeks to convict a person for violating ORS 475.894.

of the methamphetamine in his backpack. In light of the foregoing, we conclude the trial court erred when it over-ruled defendant's objection to the prosecutor's improper argument.

Under Article VII (Amended), section 3, of the Oregon Constitution, we must affirm despite error if there is "little likelihood that the particular error affected the ver-dict[.]" *State v. Davis*, 336 Or 19, 32, 77 P3d 1111 (2003); *see State v. Rosenbohm*, 237 Or App 646, 649, 241 P3d 344 (2010) ("We must reverse when it is clear that an argument was improper, properly challenged and likely to prejudice the jury unfairly." (Internal quotation marks omitted.)).

Here, the state's only harmless error argument is that "defendant failed to establish that the jury was unable to follow the court's instructions and, thus, any error was unlikely to have affected the verdict." The state argues that the trial court's instructions to the jury, among others, that the state bore the burden of proof and that, "[g]enerally, the testimony of any witness whom you believe is sufficient to prove any fact in dispute," were sufficient to remove any con-fusion as to whether defendant had to present corroborating witnesses to bolster his case-in-chief. For the reasons that follow, we disagree with the state.

First, the court's generic instructions, while clarify-ing that the state bore the ultimate burden of proof, failed to specifically inform the jury that defendant need not present witnesses to corroborate his testimony to create a reason-able doubt as to whether he had knowledge of the drugs in his backpack. That is especially so where, as here, the trial court overruled defendant's objection, because the court led the jury to believe that defendant had an obligation to call corroborating witnesses to prove his innocence. As we have observed in similar circumstances, "[t]he overruling of that objection gave the jury reason to think that the prosecutor's statement was, in fact, a correct statement of the law." *State v. Worth*, 231 Or App 69, 79, 218 P3d 166 (2009), *rev den*, 347 Or 718 (2010) (observing that "the court's generic instructions—that defendant was presumed innocent until proven guilty beyond a reasonable doubt and that the bur-den was on the state to so prove—did not provide guidance

as to the longevity of the presumption of innocence, such as to remove confusion about whether the presumption of innocence extended through jury deliberations").

Second, the prosecutor's argument did not pertain to an incidental or a collateral matter. In this case, where there was no dispute that the backpack was defendant's, the central issue reduced to whether defendant knew that the methamphetamine was inside of his backpack. Moreover, as evidenced by both parties' closing arguments, credibility was key to determining that issue in this case. Therefore, the prosecutor's rebuttal argument was unfairly prejudicial and likely affected the verdict because it improperly undercut defendant's credibility in a case in which credibility was key, defendant never admitted knowledge of the methamphetamines, and the jury was not unanimous (two jurors would have acquitted). *See State v. Logston*, 270 Or App 296, 307, 347 P3d 352 (2015) (concluding that the prosecutor's comment on the defendant's failure to present evidence was not harmless, because the prosecutor's argument bolstered the complainant's credibility which was a central issue in the case).

Finally, the prejudicial impact of the error was compounded when, after defendant objected to the prosecutor's comment on his failure to call Gillenwater, the prosecutor went on to comment on defendant's failure to call Claros to corroborate his version of events. The prosecutor's argument that "there is no evidence that he actually did leave the backpack [in the car] overnight" and that defendant was "[t]he only person who's telling you this story about this backpack being left overnight," invited the jury to speculate that defendant did not call Gillenwater or Claros to corroborate his version of events because their testimony would be unfavorable to defendant. *See Spieler*, 269 Or App at 645 (observing that "nothing in the generic instructions given by the court in this case addressed the problem of the jury being invited—without contradiction from the court—to speculate on, and draw inferences negative to the defense about, the contents of the STAR Center recording" that was not in evidence). Moreover, the prosecutor's argument that defendant's version of events should not be believed due

to his failure to call corroborating witnesses "incorrectly describ[ed] the jury's task as choosing which of two versions of events the jury finds more believable," because it was "a description that omit[ed] the possibility, among others, that the jury would find the state's version more plausible, yet not be convinced beyond a reasonable doubt." *State v. Purrier*, 265 Or App 618, 621, 336 P3d 574 (2014). That is, even if the jury disbelieved defendant's testimony that he had left his backpack in the car when Gillenwater had given him a ride the day before, there remains the possibility that the jury may not have been convinced beyond a reasonable doubt that defendant knew about the methamphetamine in his backpack. In other words, the prosecutor's statements created a risk that the jury would convict defendant just because they did not believe his story, even if the jury was not convinced that the state met its burden of proof.

Given the totality of the foregoing circumstances, we conclude that the trial court's error in overruling defendant's objection to the prosecutor's improper argument was not harmless. Accordingly, we reverse and remand.

Reversed and remanded.