786 March 18, 2026 No. 202

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

MICHAEL J. ROSS-OMSBERG,
*Defendant-Appellant.*

Marion County Circuit Court
21CR27734; A183550

Daniel J. Wren, Judge.

Submitted February 5, 2026.

Ernest G. Lannet, Chief Defender, Criminal Appellate Section, and Kristin A. Carveth, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Interim Deputy Attorney General, and Erica L. Herb, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

Defendant appeals from a judgment of conviction on six counts of first-degree sexual abuse, ORS 163.427,[1] following a jury trial. He was convicted for sexually abusing a seven-year-old child. In his first assignment of error, defendant argues that the trial court erred by denying his motion for a mistrial based on events that occurred during *voir dire*. In his second assignment of error, defendant requests plain-error review and seeks reversal and remand for a new trial due to comments made by the prosecutor during rebuttal closing arguments. The state responds that defendant's first assignment of error is unpreserved because defendant's motion for mistrial was untimely and that review is barred because he does not request plain-error review. Further, the state argues that even if defendant's motion for mistrial was timely and his argument is preserved on appeal, the trial court did not abuse its discretion by denying the motion. The state argues that defendant's second assignment of error fails because the challenged comments made by the prosecutor were not obviously improper, and even if they were improper, they did not deprive defendant of a fair trial. For the reasons provided below, we affirm.

## I.  FACTS

Defendant moved into an apartment with his then-romantic partner, the mother of the victim. Three children lived in the home including the victim, L. L viewed defendant as her father or "papa." After defendant had lived in the home for quite some time, L told a daycare provider that she did not want to get her father in trouble, but that he would "touch her private parts." The daycare provider made a report to the Oregon Department of Human Services, and a police officer visited the home to investigate. L communicated to the police officer a number of details about seeing and being asked to touch defendant's "area," including that she had seen "white stuff coming out of it." She explained it

---

[1] ORS 163.427 provides in relevant part:

    "(1)  A person commits the crime of sexual abuse in the first degree when that person:

    "(a)  Subjects another person to sexual contact and:

    "(A)  The victim is less than 14 years of age."

happened "a lot," including the day before her conversation with the police officer.

During *voir dire*, a prospective juror expressed that he could not be fair because he had already made up his mind that defendant was guilty. The prospective juror repeated several times that there was nothing that could be said or done to convince him that defendant was not guilty—"no ifs, ands, or buts, in my mind the man is guilty." The prospective juror suggested that if someone is suspected of committing sex crimes, that person is guilty. Defense counsel asked for that prospective juror to be excused for cause. The trial court took the matter under advisement and continued with *voir dire*. The prospective juror subsequently made another statement about how children are taught about "bad touch" beginning in kindergarten. Subsequently, the trial court discussed juror selection with the attorneys in chambers. When they returned from chambers, that prospective juror was excused along with all other prospective jurors who were not empaneled.[2] Then, the empaneled jury was provided precautionary instructions and excused for lunch.

At that point, defendant moved for a mistrial. Defendant argued that the prospective juror's statements "polluted the whole jury pool ***." The state argued that the motion was untimely. The state also argued that the objectionable comments "solidified the fairness of the jury," because people were "shaking their heads and rolling their eyes and did not agree *** [that someone is] automatically guilty." The trial court denied the motion and noted that he observed that other jurors reacted in ways that reflected their commitment to "hear everything" and not be "one-sided." When the trial resumed after a lunch break, the trial court reiterated to the jury that their "job is to hear

_____

[2] Because juror selection was discussed in chambers and not memorialized on the record, there is no record as to whether defense counsel's for-cause challenge was granted or whether defense counsel had to use a peremptory challenge to exclude the prospective juror in question. When parties fail to ensure a record is created regarding for-cause and peremptory challenges, our ability to review that process is limited. *See Dorn v. Three Rivers School Dist.*, 306 Or App 103, 118-20, 473 P3d 122 (2020) ("[A] party seeking to challenge a trial court's denial of a for-cause challenge to a potential juror must create a record establishing prejudice," and it was not plain error when the trial court did not require "on its own motion, that the parties' in-chambers exercise of their peremptory challenges be recorded." (Internal quotation marks and citation omitted.)).

the evidence that is presented by the district attorney and make a determination whether [they have] proven their case beyond a reasonable doubt."

L testified during trial. She was ten years old at that time. She testified about telling the daycare provider and the police officer about times when defendant would remove his underwear and show L his "not cool area," which she clarified was the part of his body he would use to go to the bathroom. L testified that defendant would have her touch his "stick" with her hand for about ten minutes at a time. She explained that sometimes "weird white stuff" came out of it and got on her mouth.

The state elicited testimony from the daycare provider, the police officer who interviewed L, and L's mother. The state also submitted a video recording of L's police interview.

After the state rested, defendant called three witnesses: defendant's mother, father, and sister. Each of them testified that L "lies" or struggles with honesty.

As relevant to this appeal, during rebuttal closing argument, the prosecutor stated,

> "Children don't lie about showing them an area who told them to keep a secret. And more importantly, [L] didn't lie and that's the only decision you have to make.

> "You're not being asked to talk about children in general. You're being asked to talk about this child. The only decision you have to make is do you believe this child.

> "And as the judge will instruct you, any one witness whom you believe is sufficient to prove any fact in dispute.

> "The only eyewitness to this event told the police what happened to her and told you when she testified yesterday what happened to her."

## II.   ANALYSIS

A.   *Motion for Mistrial*

"We review the denial of a motion for mistrial for abuse of discretion" and will reverse a conviction on that basis only when the defendant was denied a fair trial.

*State v. Osorno*, 264 Or App 742, 747, 333 P3d 1163 (2014). Article I, section 11, of the Oregon Constitution and the Due Process Clause of the Fourteenth Amendment to the United States Constitution guarantee a criminal defendant's right to a fair trial by an impartial jury. *State v. Langley*, 363 Or 482, 504, 424 P3d 688 (2018), *adh'd to as modified on recons*, 365 Or 418, 446 P3d 542 (2019), *cert den*, 141 S Ct 138, 207 L Ed 2d 1081 (2020); *Morgan v. Illinois*, 504 US 719, 726-27, 112 S Ct 2222, 119 L Ed 2d 492 (1992).

Defendant argues that "[t]he trial court should have declared a mistrial when [the prospective juror] stated that defendant was guilty because he was charged with sex crimes, and 'there [are] no ifs, ands, or buts.'" In defendant's view, the prejudicial statements made by that prospective juror polluted the jury with the impression that it was reasonable to conclude that a person is guilty simply because they were charged with a sex offense. Defendant argues that defendant was deprived of a fair trial as a result.

Defendant argues that *State v. Evans*, 344 Or 358, 182 P3d 175 (2008), and *State v. Orvis*, 332 Or App 713, 551 P3d 1002, *rev den*, 372 Or 720 (2024), support his position that he was deprived of a fair trial based on the events during *voir dire*.

The state responds that because defense counsel waited to move for mistrial until well after the offending comments were made by the prospective juror and after the jury was empaneled, given precautionary instructions, and excused for lunch, defendant's motion was not timely and is therefore unpreserved for appeal. The state further argues that, because defendant did not request plain-error review as to his first assignment of error, we should decline to exercise our discretion to review for plain error. The state also argues that, nonetheless, the trial court did not abuse its discretion by denying defendant's motion for a mistrial.

Assuming without deciding that defendant's first assignment of error is preserved and reviewable, we conclude that the trial court did not abuse its discretion in denying the motion for mistrial. In *Evans*, 344 Or at 361, 367, the Supreme Court held that a trial court did not abuse

its discretion by denying a motion for mistrial after a prospective juror said that she knew the defendant, and that she had "'an outstanding stalking order against him.'" Although we agree with defendant that *Evans* is instructive, it does not aid defendant here.

In this case, although the comments made by the prospective juror had some potential to influence other prospective jurors, the prosecutor "did not attempt to capitalize" on the views espoused by the prospective juror. *Id.* at 364 (quoting *State v. Simonsen*, 329 Or 288, 293-94, 986 P2d 566 (1999)). The trial court found that other prospective jurors reacted in a way that evinced disagreement with the prospective juror's comments. *See Simonsen*, 329 Or at 294-95 (the trial court had a superior vantage point to observe the demeanor and candor of prospective jurors). That finding by the trial court, along with the exclusion of the prospective juror from the panel, and the court's numerous statements to the jurors expressing the importance of considering all the evidence to determine whether the state proved its case beyond a reasonable doubt, leads us to determine that defendant was not deprived of a fair trial based on comments made during *voir dire* and that the trial court did not abuse its discretion in denying the motion for mistrial.

B.  *Prosecutor's Comments During Closing Argument*

Defendant's second assignment of error pertains to comments made by the prosecutor during rebuttal closing argument, which defendant did not object to during trial, but he now argues deprived him of a fair trial. He argues that the prosecutor engaged in impermissible vouching and relied on facts not in evidence when she argued: "Children don't lie about someone showing them an area who told them to keep a secret. And more importantly, [L] didn't lie and that's the only decision you have to make." Defendant requests plain-error review. The state argues that the challenged prosecutor comments are not obviously improper, did not constitute vouching, and even if they were improper, did not deprive defendant of a fair trial.

Unpreserved challenges to comments made by a prosecutor are reviewable utilizing the familiar "plain error"

criteria: that it "be an error of law, obvious and not reasonably in dispute, and apparent on the record without requiring the court to choose among competing inferences." *State v. Putnam*, 340 Or App 61, 62, 569 P3d 1014, *rev den*, 374 Or 188 (2025) (internal quotation marks and citation omitted). We may exercise our discretion to review unpreserved challenges to prosecutor comments to decide "whether, under the circumstances as a whole, [the] defendant was denied the right to a fair trial, as a matter of law, by the events that transpired at trial." *State v. Chitwood*, 370 Or 305, 312, 518 P3d 903 (2022) (internal quotation marks and citation omitted). Reversal is warranted only when the comments were obviously improper and "so prejudicial as to have denied the defendant a fair trial." *State v. Perez*, 373 Or 591, 598-99, 568 P3d 940 (2025).

"A trial court's decisions regarding control of jury argument are generally reviewed for abuse of discretion." *State v. Strain*, 374 Or 783, 789, ___ P3d ___ (2026). However, in criminal cases, a trial court's discretion is constrained by the need "to protect the defendant's constitutional right to trial by an impartial jury under Article I, section 11 of the Oregon Constitution and the right to a fair trial guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution." *Id.*

"[A]s a representative of the state," a prosecutor "owes a primary duty to see that all criminal defendants receive a fair trial. * * * [And] all of a prosecutor's arguments must comport with the constitutional protections afforded a criminal defendant at trial." *Id.* at 791 (internal quotation marks and citations omitted). A prosecutor is not allowed to "express [their] personal opinions as to witnesses' credibility," but "counsel may argue that the jury should regard a witness as credible (or not)" based on evidence. *State v. Sperou*, 365 Or 121, 135, 442 P3d 581 (2019) (emphasis omitted); *see also Davis v. Cain*, 304 Or App 356, 365, 467 P3d 816 (2020) (A prosecutor's arguments cross into impermissible vouching territory when they are "in the nature of 'take my word for it,' not 'let me show you.'"); *State v. Montgomery*, 327 Or App 655, 659-60, 536 P3d 627 (2023), *rev den*, 371 Or 825 (2024) (same). It is impermissible for counsel to reference facts

outside of evidence. *Putnam*, 340 Or at 65. Statements made by counsel during argument are reviewed "in context, not in a vacuum." *State v. Mayo*, 303 Or App 525, 530, 465 P3d 267 (2020) (internal quotation marks and citation omitted).

In this case, the prosecutor's statement that "[L] didn't lie and that's the only decision you have to make," did not obviously constitute vouching, given the context in which that statement was made. *See Putnam*, 340 Or at 64-65 (prosecutor permissibly argued "that the victim was credible based on her testimony and other evidence"). Despite saying "L didn't lie," the prosecutor's comments did not obviously constitute vouching for two reasons. First, the prosecutor—in the same sentence—reminded the jurors that it was their "decision [they] ha[d] to make," regarding L's truthfulness. And the prosecutor reminded the jury about instructions from the trial court about proper juror evaluation of witness testimony. Second, the prosecutor argued from *the evidence* to suggest that L was truthful. The prosecutor's use of the word "area" referred to L's use of the words "area" and "not cool area" to describe defendant's penis. The prosecutor said that L was the "only eyewitness" and she "told the police what happened to her and told you when she testified yesterday what happened to her." The prosecutor argued that "the evidence demonstrates * * * that [L] was reluctant to say anything to the police that would get [defendant] in trouble because she cared for him, because she called him Papa." In our view, the prosecutor did not express a personal opinion about L's credibility, but rather invited the jurors to find that the evidence supported a finding that L was credible.

The prosecutor's comment that "children don't lie" about sexual touching was improper because it suggests that the jury can infer truthfulness simply when a declarant is a child. *See Putnam*, 340 Or App at 65 (prosecutor statement about what "sexual offenders of children will do" was improper where there was "no testimony or evidence related to general behaviors or tactics employed by child sex abusers").

However, the improper comment did not deprive defendant of a fair trial. Had defense counsel timely objected,

any harm could have been cured by striking the comment and giving a curative instruction, if requested. *See id.* at 66. And sufficient evidence was adduced to support the prosecutor's argument that L was being truthful because it is not likely that a young child would know the information reflected by L during her testimony unless the child had been abused.[3]

Having considered the arguments raised by both parties and having reviewed the record, including the transcript of *voir dire*, the instructions provided by the trial court to the jurors, opening statements and closing arguments, and the evidence, we are not persuaded that defendant was deprived of a fair trial.

Affirmed.

---

[3] Context, including the state's initial closing argument, can aid us in assessing what "the jury would more likely have understood." *Perez*, 373 Or at 612.

During the state's initial closing argument, the prosecutor read a portion of L's testimony about defendant's penis being "very small" and then "very long" when "he [is] not relaxing." The prosecutor also argued that L made a motion like defendant masturbating himself and that L talked about white stuff coming out of his "area." Then the prosecutor argued that a seven-year-old child is "not go[ing] to make that up. She's not going to conjure that up. She's not taught that by anyone. * * * He's teaching her and exposing her to sexual acts for the first time in her very young, very vulnerable life."